Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6549 | **DATE** | 8/16/2004 |
| **CASE TITLE** | Loveday vs. Village of Villa Park | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, the defendants' motion for summary judgment is granted in part and denied in part. Status hearing set for 08/25/04 to stand. Enter Memorandum Opinion.

(11) ■ For further detail see order attached to the original minute order.

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

| MW | courtroom deputy's initials |
|---|---|

U.S. DISTRICT COURT CLERK

2004 AUG 17 AM 8:21

Date/time received in central Clerk's Office

number of notices

AUG 17 2004
date docketed

AK
docketing deputy initials

date mailed notice

mailing deputy initials

Document Number

38

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
AUG 17 2004

| | | |
|---|---|---|
| **JOSEPH J. LOVEDAY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 02 C 6549** |
| **VILLAGE OF VILLA PARK, an Illinois municipal corporation, JAMES CIHAK, in his individual capacity, and ARTHUR STILLWELL, in his individual capacity,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Village of Villa Park's, James Cihak's ("Cihak"), and Arthur Stillwell's ("Stillwell") motion for summary judgment. For the reasons set forth below, we grant the motion in part and deny the motion in part.

## BACKGROUND

On September 15, 2000, Plaintiff Joseph Loveday ("Loveday") was intoxicated at his residence. Loveday's wife, Lynne Loveday ("Lynne"), left the

38

home with three of their four children because she feared for the safety of her children. After reaching her parents' home, Lynne called the Villa Park police department, informed the police that her husband was intoxicated, and asked them if they would take her other child, Trevor, out of her residence. According to Loveday, the police then asked Lynne if Loveday was dangerous, to which she replied that he was not, and that he had no weapons. The police instructed Lynne to meet them at the Loveday residence, which she then did.

Shortly after Lynne returned to the Loveday residence, Officer Cihak of the Villa Park police department arrived. Loveday weighed between 250 and 300 pounds and was approximately six feet, two inches tall. Officer Cihak weighed approximately 195 pounds, and was six feet tall. Loveday admits that he was intoxicated when Cihak arrived at his house and admits that he swore at Cihak and told him to leave his property. Loveday acknowledges that Cihak told him to calm down and that Loveday again swore at Cihak. Cihak then pushed Loveday backward. Cihak claims that he did so because he feared for his safety and he wanted to create more space between himself and Loveday. Loveday claims that he pushed back in self-defense. A scuffle ensued. Loveday attempted to get away from Cihak and when Loveday eventually detached himself from Cihak, he ran into his house. Loveday admits that as he ran into his house he said to Cihak: "Boy, are you in trouble." Loveday claims that he made the remark because he was intending to call the police sergeant and complain about Cihak. Cihak chased Loveday into his

home and subdued him. According to Loveday, Cihak pinned him to the ground by placing his knees in Loveday's back. Loveday contends that Cihak pinned him down so that he could not move his arms and that Cihak sprayed Loveday with pepper-spray because Loveday would not extend his hands for Cihak's handcuffs. Cihak contends that he used pepper-spray because Loveday was resisting arrest by refusing to extend his arms.

Stillwell arrived on the scene when Cihak had Loveday pinned to the ground. Loveday contends that Stillwell "kneed Plaintiff Loveday in the ribs" apparently while Cihak "got off Plaintiff Loveday's back." (SAF 60). Loveday was arrested and taken to the police station. Loveday also contends that while at the station he swore in Cihak's presence and Cihak pushed his head against a concrete wall.

Loveday was charged with aggravated assault and resisting arrest. In Illinois state court, the jury found Loveday not guilty of aggravated assault, but guilty of resisting arrest by a peace officer. Loveday then brought the current three-count complaint against Defendants Village of Villa Park, Cihak, and Stillwell. The complaint contains a 42 U.S.C. § 1983 ("Section 1983") unreasonable use of force claim against all Defendants (Count I), a Section 1983 arrest without probable cause claim against Cihak and Stillwell (Count II), and an Illinois common law claim of malicious prosecution claim against Cihak (Count III).

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);*Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the

non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Village of Villa Park

Loveday has brought an excessive force claim against the Village of Villa Park. Loveday indicated in his answer to the instant motion that he is not opposing summary judgment for Defendant Village of Villa Park. (Ans. 2). Therefore, we grant the Village of Villa Park's motion for summary judgment.

II. Qualified Immunity

Cihak and Stillwell argue that they are entitled to qualified immunity. Law enforcement officers are entitled to "qualified immunity for conduct performed within the scope of their official duties." *Dunn v. City of Elgin*, 347 F.3d 641, 648 (7th Cir. 2003). However, officers are not entitled to qualified immunity "if the plaintiff has shown a violation of h[is] constitutional rights, and . . . those constitutional rights were clearly established at the time of the violation, 'such that a reasonable official would understand that what he was doing violates those rights.'" *Id.* (quoting in part *Morrell v. Mock*, 270 F.3d 1090, 1094 (7th Cir.2001)).

The defense of qualified immunity is an affirmative defense to Section 1983 claims. *Gossmeyer v. McDonald*, 128 F.3d 481, 495 ( 7th Cir. 1997). A defendant is

required to "set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense* . . ." Fed. R. Civ. P. 8(c). The defense can be raised in the answer to the complaint or in a motion to dismiss. Fed. R. Civ. P. 8(b) & (c); *Gossmeyer*, 128 F.3d at 495; *See Lanigan v. Village of East Hazel Crest, Illinois*, 110 F.3d 467, 471 (7th Cir. 1997)(stating that "[q]ualified immunity is an affirmative defense which must be pleaded."). A Defendant waives the affirmative defense of qualified immunity if the Defendant fails to assert the defense when Defendants have the opportunity to do so at any stage of the proceedings. *Maul v. Constan*, 928 F.2d 784, 785-87 (7th Cir. 1991). In this action neither Cihak nor Stillwell raised the defense of qualified immunity in their answer to the complaint and neither filed a motion to dismiss. Defendants first raise the defense in their motion for summary judgment. Loveday argues that Defendants failed to raise the defense in a timely fashion and Defendants' only response in their reply brief is that "Defendants put the plaintiff on notice of this issue in their answers." (Reply 5). First of all, the notice pleading standard is associated with Federal Rule of Civil Procedure 8(a) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." As indicated above, Rule 8(c) requires a defendant to "set forth

affirmatively" an affirmative defense.

It would also be unfair for Defendants to spring the defense upon Loveday at this juncture, thus depriving Loveday of the opportunity to conduct discovery focusing on the defense. Defendants never sought leave to amend their answers. However likely it might be that as officers of the law, Defendants would assert the defense of qualified immunity as an affirmative defense, Defendants needed to raise the defense. A summary judgment review must be based upon the pleadings and evidence produced during discovery. It is not proper for a party to interject new allegations, evidence, or defenses into the case during the briefing process of a summary judgment motion.

We note that Defendants' failure to raise the defense of qualified immunity is of minimal importance because, even if Defendants had properly raised the defense, the ultimate result in regards to each claim would be the same. As will be explained in detail below, we grant Stillwell's motion for summary judgment and, had Stillwell properly raised the qualified immunity defense, he would have been entitled to qualified immunity based on the evidence as well. We grant Cihak's motion for summary judgment in regards to the push at Loveday's house and the pepper spray incident. Cihak would have been entitled to qualified immunity on his conduct relating to such claims. However, based on Loveday's portrayal of the incident in the interrogation room, Cihak would not have been entitled to qualified immunity for that claim and we deny Cihak's motion for summary judgment on that claim.

III. Excessive force

Cihak and Stillwell seek summary judgment on the excessive force claims. Loveday argues that excessive force was used in four instances. The alleged instances were when: 1) Cihak pushed Loveday backward, 2) Cihak used pepper spray on Loveday, 3) Stillwell put his knee in Loveday's ribs, and 4) Cihak allegedly pushed Loveday's head against the wall.

When an excessive force claim concerns the circumstances involving an arrest, a court must "evaluate the officers' use of force according to the reasonableness standard of the Fourth Amendment." *Morfin v. City of East Chicago*, 349 F.3d 989, 1004-05 (7th Cir. 2003). In order to determine whether the force used by an officer was reasonable, the court must undertake "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* In making the determination, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* In determining whether the use of force was reasonable, the court should consider the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003)(quoting

*Graham v. Connor*, 490 U.S. 386, 396 (1989)).

A. Pushing Incident At Loveday's Home

Loveday claims that Cihak pushed him backwards without provocation. Cihak claims that he feared for his safety and he pushed Loveday in order to create space between himself and Loveday. Loveday quotes the court in *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996), which states that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." However, the pertinent language for this case is: "without any provocation whatsoever." In the instant case, Loveday acknowledges that he engaged in conduct that, considering the situation at hand, could have reasonably been considered provocation. The undisputed facts indicate that Cihak acted within the scope of reasonable conduct in pushing Loveday, considering the events from Cihak's perspective. Loveday's after the fact contentions that he never intended to harm Cihak or provoke Cihak are of little relevance for the determination of the reasonableness of Cihak's actions.

Loveday admits that he was intoxicated at his home when Cihak arrived at the scene. ( R SF 15). Loveday admits that at the time in question he was 6'2" tall and weighed 250-300 lbs. and that Cihak was 6' tall and weighed approximately 195 lbs. ( R SF 16, 17, 18, 19). Loveday admits that he was belligerent when Cihak first arrived. ( R SF 20). Loveday admits that Cihak told him to calm down and that

Loveday responded by swearing at Cihak and telling him to "get the f___ off my property." ( R SF 21, 22). Loveday admits that when Cihak pushed Loveday the two were very close in proximity to one another. ( R SF 26). Loveday admits that he was "very belligerent and agitated" when the push occurred. ( R SF 27, 28). Loveday also admits that at the time of the push Loveday was pointing his finger and was swearing at Cihak telling him to "get the f___ off" his property. ( R SF 29). Such physical movements and such a statement could reasonably be deemed a threat to an officer's safety when made in close quarters by a belligerent and intoxicated 6' 2", 250 lb. man. Thus, Loveday's conduct was sufficient provocation to justify the push by Loveday to ensure his safety. We are required to view the circumstances as they occurred from Cihak's point of view at the scene, *Scott*, 346 F.3d at 756, and we will not second guess such a limited and reasonable response by an officer in such a situation.

Loveday contends that this fact should not be considered because it was Cihak that came closer to Loveday and placed himself next to Loveday. ( R SF 26). However, even if Loveday is correct, he does not assert that Cihak's moving closer to Loveday was done in an aggressive manner. Loveday acknowledges that the two were engaged in a conversation ( R SF 26) and thus there is nothing unnatural about coming closer to speak to someone, particularly if the person approaching is trying to calm down the other person. Also, even if Cihak came up close to Loveday, there is no reason why he could then not sense impending danger based on the

circumstances after he approached Loveday and act appropriately.

Loveday also argues that if Cihak wanted to create space for his safety he could have simply stepped back instead of pushing Loveday. This argument merely presents one alternative course of action and to suggest that it was the only proper alternative would be to impermissibly judge Cihak's actions based on hindsight. It could very well be that if an officer is facing an individual in an intoxicated, belligerent, and unpredictable state, that to step back would indicate fear on the officer's part and thus embolden the individual and encourage the individual to assault the officer. Therefore, we grant Cihak's motion for summary judgment on the excessive force claim in regards to the pushing incident in Loveday's home.

B. Pepper Spray Incident

In regards to the pepper-spray incident. Loveday claims that he could not get his hands free to comply with Cihak's order to extend his hands to be handcuffed because they were pinned beneath him. Cihak claims that he sprayed Loveday because Loveday was being uncooperative and was resisting arrest. Based on the admissions by Loveday that he was belligerant and intoxicated and was resisting arrest up until he was tackled by Cihak, no reasonable trier of fact could find that Loveday acquiesed to the arrest without resistance when Cihak attempted to handcuff him. Also, even if Loveday told Cihak that he could not get his hands free before Cihak used the pepper spray, the parties were physically entangled, had just

finished a chase into Loveday's home, and likely breathing heavily at that juncture. Cihak was likely using all of his concentration to properly handcuff Loveday who he had tackled and had pinned to the floor. Thus, even if Loveday made his claimed statement about the inability to produce his hands at that moment, with his face on the floor, it is entirely likely that Cihak did not hear Loveday's explanation.

Another reason why Loveday cannot contest the lawfulness of the pepper spray incident is that Loveday was convicted in state court for resisting arrest. Therefore, he cannot now challenge the lawfulness of the conviction in this Section 1983 action. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

C. Stillwell's Conduct

There are no allegations that Stillwell had any role in the scuffle and chase leading up to the pepper-spray incident or that he was even present when they occurred. There are also no allegations that Stillwell took part in the alleged incident involving Loveday's head being pushed against the wall. Nor are there any allegations or evidence indicating that Stillwell could have prevented the incident. Thus, the only claim against Stillwell for excessive force is in regards to the allegations concerning the handcuffing and arrest of Loveday. Loveday claims that Stillwell placed his knees in Loveday's ribs to give Cihak an opportunity to get up and complete the arrest. Both sides agree that Stillwell arrived at the scene and found Cihak pinning down Loveday. Stillwell arrived at the scene, saw a fellow

officer attempting to handcuff Loveday, and assisted Loveday in that process. There is not sufficient evidence indicating that Stillwell acted improperly in assisting Cihak in completing the arrest. Therefore, we grant Stillwell's motion for summary judgment on the excessive force claim.

D. Interrogation Room Incident

Loveday contends that in the interrogation room after the arrest Loveday swore and Cihak responded by pushing Loveday's head against the concrete wall. Loveday testified as to these facts regarding the incident at his deposition. Cihak denies that the incident took place and Stillwell claims that he does not recall such an incident. The alleged interrogation room incident, unlike the pepper spray incident, was completely separate from the events involving the arrest and thus is not in any way connected to the conviction for resisting arrest. Thus, there is a genuine issue of fact that cannot be resolved by summary judgment and we deny Cihak's motion for summary judgment on the excessive force claim based on the alleged interrogation room incident.

IV. False Arrest Claim (Count II)

Cihak seeks summary judgment on the false arrest claim against him. If an officer has probable cause to arrest an individual, the individual is barred from

bringing a Section 1983 claim against the officer for false arrest. *Morfin*, 349 F.3d at 997. Probable cause is determined by considering the "totality of the situation at the time of the arrest" from the officer's point of view at that time. *Id.*

A. State Court Proceedings

Defendants argue that since Cihak was convicted in state court of resisting arrest, the lawfulness of the related arrest cannot be challenged. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87.

Loveday argues that he was acquitted of the charge of assault and that he was originally arrested for assault. Loveday contends that under Illinois statutory law, he could be found guilty for resisting arrest even if the arrest was proven to be unlawful. However, in order to defeat a false arrest claim, a defendant officer is not necessarily required to show probable cause for the charge that the plaintiff was arrested for. *Biddle v. Martin*, 992 F.2d 673, 676 (7th Cir. 1993). A defendant officer may also show that there was probable cause for a closely related charge.

*See id.* (stating that "in § 1983 actions for false arrest, probable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed for arrest on a closely related charge").

In the instant action, the arrest was closely related to the charge of resisting arrest. The arrest and resistance of arrest were all part of the same set of events and Loveday cannot view each charge separately in a vacuum. A finding for Loveday on the false arrest claim would necessarily create a scenario that would have rendered his resisting arrest conviction invalid. Therefore, Loveday is barred from bringing a Section 1983 claim for false arrest since his conviction for resisting arrest was not reversed or vacated.

B. Probable Cause

Even if we were to consider the assault charge an isolated and separate charge, solely connected to the arrest and not the resisting arrest conviction, the result would be the same because Cihak clearly had probable cause when he initially told Loveday that he was under arrest. As explained in great detail above, Loveday admits that he was taller than Cihak and weighed more than Cihak. Loveday admits that he was intoxicated and belligerent and that he made a threatening statement and a physical gesture while he was close to Cihak. As indicated above, Cihak's action in pushing Loveday was reasonable. Thus, there is sufficient evidence that indicates that Cihak had probable cause to make the arrest and the false arrest claim would be

barred on that basis as well. Therefore, we grant Cihak's motion for summary judgment on the false arrest claim.

V. Illinois Malicious Prosecution Claim (Count III)

Cihak seeks summary judgment on the Illinois state law malicious prosecution claim (Count III). For a malicious prosecution claim brought under Illinois law a plaintiff must show that: 1) "the defendant brought the underlying suit maliciously and without probable cause," and 2) "the former action was terminated in his or her favor." *Cult Awareness Network v. Church of Scientology Intern*, 685 N.E.2d 1347, 1350 (Ill. 1997). The plaintiff must also "plead and prove some 'special injury' or special damage beyond the usual expense, time or annoyance in defending a lawsuit." *Id.*

In the instant action, based on the same evidence and allegations referred to above in regards to the false arrest claim, we conclude that there is sufficient evidence that Cihak had probable cause under Illinois law, thus foreclosing a malicious prosecution claim. In addition, the probable cause for the resisting arrest charge which was a closely related charge is also sufficient to preclude a malicious prosecution claim. *Biddle v. Martin*, 992 F.2d at 676. Therefore, we grant Cihak's motion for summary judgment on the malicious prosecution claim.

## CONCLUSION

Based on the foregoing analysis, we grant the Village of Villa Park's motion for summary judgment on all claims against the Village. We grant Stillwell's motion for summary judgment on the excessive force claim. We grant Cihak's motion for summary judgment on the excessive force claims brought against Cihak based on the push in Loveday's house and the pepper spray incident. We deny Cihak's motion for summary judgment on the excessive force claim against Cihak based on the alleged interrogation room incident. We grant Cihak's motion for summary judgment on the false arrest claim and on the Illinois law malicious prosecution claim.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 16, 2004